[L. A. No. 7077. In Bank.—August 11, 1922.]

McAVOY COMPANY (a Corporation), Appellant, v. ITALIAN-AMERICAN VINEYARD COMPANY (a Corporation), et al., Respondents.

[1] SALES—SHIPMENTS OF WINE—TIME AND PLACE OF PAYMENT—UNCERTAINTY—BREACH BY BUYER.—Where a vineyard company upon receipt of a contract for the purchase of wine negotiated by its representative in Chicago wired him to obtain the buyer's agreement to make payment for shipments upon presentation of shipping documents at a Los Angeles bank, and the buyer wired reply that payments would only be made upon receipts of drafts with bills of lading attached, but did not designate the point, whether in Chicago or Los Angeles, where the drafts were to be presented, such uncertainty being created by the buyer, the payments were required to be made upon presentation of shipping documents at a Los Angeles bank, and the seller was justified 'in canceling the contract where the buyer after repeated requests to designate the place of such presentation, failed and refused to do so.

APPEAL from a judgment of the Superior Court of Los Angeles County. Charles Wellborn, Judge. Affirmed.

The facts are stated in the opinion of the court.

Joseph L. Lewinson and William A. Barnhill for Appellant.

Prescott & Prescott, Frank C. Prescott and Frank G. Falloon, for Respondents.

RICHARDS, J., *pro tem.*—This action was instituted by the plaintiff corporation against the defendant Italian-American Vineyard Company, a corporation, and certain other defendants, to enforce the specific performance of a certain contract for the sale and delivery to the plaintiff of six thousand barrels or approximately three hundred thousand gallons of wine; or, in case specific performance could not be had, then for damages in a large sum. The said defendant, Italian-American Vineyard Company, denied the making or execution of any such contract for the sale or delivery of a larger amount of wine than about

fifteen thousand gallons, which it alleged had been delivered and paid for. It then proceeded in its answer to set forth in detail the history of the transaction between itself and said plaintiff as to the remainder of the said six thousand barrels of wine, and after so doing alleged that it was the plaintiff which had breached whatever contract existed between the parties as to the sale and delivery of said wine by its failure to make the payments required by it to be made at the time and place specified in the writings which embodied the agreement of the parties. The trial court made its finding upon the issues as thus tendered in the said defendant's favor and rendered its judgment accordingly, that the plaintiff take nothing by its said action. The correctness of these findings of fact and the law is the chief subject of consideration upon this appeal.

The evidence in the case sufficiently shows that the respondent, Italian-American Vineyard Company, for a number of years prior to the month of March, 1920, had been a corporation engaged in the business of buying grapes and making and marketing wine, with its principal place of business at San Gabriel, California, and its main winery at Cucamonga, in the vicinity of which latter place the grapes were grown by various growers who had organized themselves into a corporation known as the "Cucamonga Vintage Company" for the purpose of better collecting and handling their grape product. According to the arrangement between the Italian-American Vineyard Company and the Cucamonga Vintage Company, when the grape growers of the region would bring their grapes to the warehouse of the latter they would be taken over by the former and made into wine, which would be stored in the bonded winery of the Cucamonga Vintage Company and also in the wineries of the Italian-American Vineyard Company until such time as the latter could make sales of said wine. In the latter part of the year 1919 the Italian-American Vineyard Company found that it had, or presently would have, under this arrangement, about three hundred thousand gallons of wine in the bonded winery of the Cucamonga Vintage Company, for which it was necessary to find a market in order to meet its obligations to the grape growers who had furnished the grapes from which said wine had been manufactured. In the course of that

effort the president of the Italian-American Vineyard Company went to Chicago to attend a beverage exposition being held in that city in the spring of the following year. He there met personally one Joseph Schneible, who was an employee of the plaintiff herein and who had invented a process for de-alcoholizing beer and had installed a plant for the utilization of his said process upon the plaintiff's premises. Schneible was also engaged in experimenting with a view to developing the process for the de-alcoholizing of wines for the dual purpose of extracting their alcohol content and of developing from the residue a beverage which could be marketed within the laws relating to prohibition. Depending upon his success in such experiment, he was desirous of securing for his employer, the plaintiff herein, a large amount of wine having uniform qualities because manufactured by a single wine maker from grapes grown in a single or limited region. Several interviews were had with said Schneible and some letters passed between himself and the president of the Italian-American Vineyard Company upon the subject, but nothing came of these until early in the month of March, 1920, when the Italian-American Vineyard Company came in touch with a man named B. F. Klein, who was represented to it as a person who could probably dispose of their wine. The result was an arrangement entered into between said corporation and Klein by which the latter was to go to Chicago as a representative of the said corporation in quest of a purchaser for its wine. In thus securing the services of said Klein it was fully explained to him at the time and reiterated to him in the correspondence which followed, the necessity of having whatever contract he might be able to make for the sale of said wine provide that the payments therefor should be made at Los Angeles prior to the shipment of the wine and beginning by or about the 1st of May and being completed by August in order to enable the Italian-American Vineyard Company to meet its obligations to the grape growers from whose product said wines had been made. Klein took his way to Chicago during the first week in March, 1920, equipped with the resolution of said corporation empowering him to act as its special representative for the purpose of disposing of its said wine and also with letters of introduction to Joseph Schneible. Ar-

riving in Chicago he presented these credentials to said Schneible, who in turn presented him to the president of the plaintiff herein, with whom several conferences occurred relative to the sale of the respondents' wine, which resulted in a tentative offer to purchase six thousand barrels of wine at the price of fifty-one cents per gallon with deliveries of a thousand or more barrels per month, and a cash advance of $10,000 upon consummation of the contract for such purchase. This tentative offer was communicated by Klein to the Italian-American Vineyard Company by a telegram sent to its president on March 10, 1920, who on the following day sent a telegram to Klein accepting said order, but particularly providing that the payments of the balance thereon should be made on presentation of the shipping documents at a bank in California. Following the receipt of this order the officials of the Italian-American Vineyard Company had a conference with the officials of the Cucamonga Vintage Company relating to the shipment of and payment for said wine, at which meeting said telegrams were exhibited. It was then insisted by the Cucamonga Vintage Company that all wines shipped under said order must be paid for before shipment and that in any event the Italian-American Vineyard Company must begin making to the Cucamonga Vintage Company payments upon said wine, whether or not the same should be shipped under said order, in the following amounts and at the following times, viz.: On March 20, 1920, $20,000.00; during May, 1920, $26,500.00; during June, 1920, $26,500.00; during July, 1920, the balance due upon the grapes from which said wine had been made, amounting to $47,732.69. In the event of failure to make said payments the Italian-American Vineyard Company was notified that it would be in default and that its interest in said wines would be sold elsewhere. Following this interview the Italian-American Vineyard Company sent a letter to Klein explaining its purport and emphasizing the necessity of having its payments made at a bank in California as a prerequisite to the shipment of said wine. On the 15th day of March, 1920, the following agreement was drawn up and executed by the Italian-American Vineyard Company, acting through its representative B. F. Klein, and Joseph Schneible as trustee, it being understood

by the immediate parties executing said contract that said Schneible was acting as trustee for the plaintiff herein. Said contract reads as follows:

"Chicago, Ill., March 15, 1920.
"AGREEMENT OF SALE AND PURCHASE.

"Joseph Schneible, trustee, of Chicago, Illinois, has this day purchased from the Italian American Vineyard Co., of San Gabriel, California, a quantity of wines owned by them and stored in the bonded wineries Nos. 45 and 46 of the 6th District of California, said purchase being made under the following conditions:

"For and in consideration of a prepayment of ten thousand dollars ($10,000.00), receipt of which is hereby acknowledged by the vendor as payment in full for fifteen thousand seven hundred eighty one (15,781) gallons of Zinfandel wine in barrels (as hereinafter set forth), the vendor agrees to sell and deliver f. o. b. cars Los Angeles, California, or common point, approximately six thousand (6000) barrels of Assorted wines in the following approximate proportions: 20% Barbara
40% Zinfandel
20% Claret
10% Reissling
10% Palermo

"The agreed price of same to be 51 cents per gallon with an additional charge of $6.50 each for fifty gallon cooperage. Shipments to be made strictly in accordance with Federal Regulations Nos. 60 and 61, under titles 2 and 3 of the National Prohibition Act of Oct. 28, 1919, and in quantities to be governed by vendee's requisitions, total amount to be ordered out approximately a thousand barrels per month. The vendee reserves the right to cancel this order at any time prior to April 30, 1920, as to all but said fifteen thousand seven hundred eighty-one (15,781) gallons of Zinfandel wine for which payment has been made as above, and which shall be shipped out in barrels when requested in writing by said Schneible. Title to said fifteen thousand seven hundred eighty one (15,781) gallons of Zinfandel wine shall vest immediately in said Schneible on payment of said ten thousand dollars ($10,000), but said wine shall be stored for him by said Vineyard Com-

pany (without expense) until April 30, 1920, if so desired.

"The vendor agrees that all wines delivered in accordance with this agreement shall measure up to the same standard and analysis as samples submitted.

"In witness whereof, both parties to this agreement have placed their hands and seals this day and date above written.

. "Joseph Schneible,

"Trustee.

"Italian American Vineyard Co.

"Per B. F. Klein,

"Special Rep.

"That a barrel of wine contains about fifty (50) gallons."

The original of this contract together with the check for the $10,000 referred to therein were immediately sent to the respondent at San Gabriel, California, in response to which the latter sent to Klein at Chicago the following two telegrams, the first of which read as follows:

"Received today contract ten thousand dollars  Can you have Schneible wire us immediately stating if they take all the goods they will pay in full by August thirty even if they have not yet received all the goods  You know we have to pay all the goods before August first  Contract does not state payment in full for shipment on presentation shipping documents bank here  Did you receive letter hundred dollars  Wire immediately sign permit for car and mail immediately."

The second of the two telegrams read as follows:

"Received check sample Schneible  Wire us immediately concerning contract and agreeing to pay fifty one cents per gallon naked to us f o b shipping point here cooperage six dollars fifty cents extra and all taxes extra payment on presentation shipping document at bank here agreeing to pay us for at least one thousand barrels every month if they take the thousand barrels or not and to pay the six thousand barrels in full not later than August thirtieth cannot deposit check until we hear from Schneible  Wire immediately."

These two telegrams being exhibited to said Schneible he declared, according to his own testimony, that he would not

agree to make payments for the wine at Los Angeles, and that if Klein's principal insisted upon this the deal was off; that payments for the wine would only be made in the city of Chicago upon receipt of drafts with bills of lading attached. He was requested by Klein to wire direct to the respondent what his wishes were in this respect and he accordingly sent the following telegram to the respondent on or about March 21, 1920, viz.:

"Klein's telegram received. I will pay prices mentioned your telegram and taxes extra and will take and pay for one thousand barrels monthly beginning May first as per my contract unless I cancel contract by April thirtieth and will pay in full by August thirtieth all payments to be made on receipt drafts with bills of lading attached."

Two days later the respondent sent directly to the appellant herein the following telegram:

"Your wire satisfactory We have our permits but you must get Chicago Prohibition Director to sign permit to ship from bonded winery 45 Have Klein sign permit for us on receipt permit will ship car immediately Will see VAI tomorrow regarding his check Trusting everything satisfactory With best wishes."

Within a few days thereafter the respondent began shipping to the appellant the 15,781 gallons of wine, which shipments were received by the appellant in due course, the same being the shipments of wine for which, according to the contract above set forth, the sum of $10,000 already forwarded by check was to constitute payment in full. During the early part of May several telegrams passed between the parties, relating chiefly to the shipments of the balance of the 15,781 gallons of wine for which the respondent was already paid; but on May 18, 1920, the respondent sent to B. F. Klein, in care of Joseph Schneible at Chicago, the following telegram:

"Alhambra, California, May 18, 1920.

"B. F. Klein,
    "Care Joseph Schneible,
        "130 North Wells Street,
            "Chicago, Illinois.

"Will start shipping thousand barrels tomorrow first car white balance to be shipped immediately. Wire bank instructions by return wire.

"G. Demateis."

The reason for sending this urgent message was that the Cucamonga Vintage Company was pressing the Italian-American Vineyard Company for money due, through it, to the grape growers from whose product the wine in question had been made, with the result that on May 20th, 1920, the respondent sent a direct message to Schneible reading as follows:

"Los Angeles, California, May 20, 1920.
"Mr. Joseph Schneible,
"130 North Wells Street,
"Chicago, Illinois.
"For convenience in our banking operations please instruct immediately Farmers Merchants National Bank of Los Angeles to pay us against shipping documents for balance of one thousand barrels which we are shipping before June first. Please answer by return wire.
"G. Demateis."

To this dispatch also no reply was made either by Schneible or by the appellant herein. On May 24, 1920, the respondent sent to Schneible the following telegram:

"Alhambra, California, May 24th, 1920.
"Joseph Schneible, Trustee,
"130 North Wells Street,
"Chicago, Illinois.
"Having not received any confirmation of telegram sent you on the twentieth instant we regret to advise that we have broken agreement with you for the six thousand barrels of non-beverage wine.
"Italian American Vineyard Co.
"G. Demateis,
"President."

On May 28, 1920, the respondent received from Schneible a reply to its telegram of May 24th, which read as follows:

"Your telegram of May 24th received. I will hold you to the letter of the contract for wine purchase and will expect shipments to come forward in accordance therewith. I have fulfilled all terms of the contract and you have not even completed the first shipment thereunder. I am ready to perform on my part all conditions."

In the meantime another situation had arisen, which the appellant strongly insists caused the alleged breach of its contract on the part of respondents. In the latter part of April, 1920, one Maurice Selig, a wine broker and real estate dealer in San Francisco, came into communication with the respondents herein with a view to making some profitable arrangement for the disposal of the said wines of said respondents. Between that time and the latter part of May several interviews occurred between the respondents' officials and said Selig, which finally took form in a proposition in writing, bearing date of May 31, 1920, and which was accepted by the respondents on the following day, wherein said Selig proposed that he would undertake the sale of about 280,000 gallons of respondents' wine, the same to be sold to the best possible advantage and the profits arising out of such sale to be divided equally between the respondents and said Selig. Under this arrangement during the month that followed a considerable amount of wine, which the appellant claims to have been covered by said agreement with it, was disposed of at prices which indicated that there had occurred a decided advance in the selling price of wine during the month of May. As to this transaction, however, the trial court found, upon sufficient evidence, that is was a *bona fide* transaction on the part both of the corporation and of said Selig and those associated with him in the disposal of said wines. With respect to the main transaction between the parties hereto, the trial court found that as to the 15,781 gallons of wine embraced in the first shipments to the appellant, the transaction was a single purchase and was completely consummated by the shipment of said wines by the defendant and by the payment therefor in full through the application thereto of the $10,000 check which had been transmitted to the defendant upon the execution of the original agreement for the sale to Joseph Schneible, trustee, of its said wine. As to the balance of the six thousand barrels of wine covered by said agreement, the trial court found that the defendant had expressly provided, in its two telegrams modifying the contract as originally drawn by Klein, that the payments for said wine were to be made at some bank in Los Angeles, California, to be designated by the plaintiff, and were to be begun at an early date in

May, when the said defendant was prepared to make shipments of the balance of its wine, and to present the shipping documents at such designated bank. The trial court further found that the said Schneible so understood the said telegrams of the defendant modifying the original arrangement, and that said Schneible also believed and understood that his said answer to said telegrams would be understood by said defendant as agreeing with that arrangement as to the payments for said wine. The trial court further found that when the defendant sent its dispatch of March 23, 1920, in reply to the plaintiff's said answering telegram, in which it was stated that the terms of said telegram were satisfactory to both parties to the transaction, it understood and believed that the wine was to be paid for at Los Angeles, California.

[1] The plaintiff makes its main assault in this field upon these findings of the trial court as to the time and place of the payment for the undelivered portion of the six thousand barrels of wine, claiming that said findings are unsupported by the evidence and are in conflict with the terms of the writings which embraced the contract between the parties. In making this assault the plaintiff chiefly relies upon the language of its reply telegram dated March 21, 1920, where it states that "all payments to be made on receipt drafts with bills of lading attached." It will be noted, however, that the sender of this telegram did not expressly state at what point, whether in Chicago or in Los Angeles, the draft with bills of lading attached was to be presented on receipt. This omission was most significant in the presence of the explicit statement in the two telegrams of the defendant, above referred to, and to which the plaintiff's said dispatch was a reply, that the payments were to be made at a Los Angeles bank. The utmost that can be said with reference to the above expression in the plaintiff's answering dispatch is that it created an uncertainty upon the subject of the place of payment; and this gives application to the well-established rule for the interpretation of contracts embodied in section 1564 of the Civil Code, providing that in cases of uncertainty "the language of a contract should be interpreted most strongly against the party who caused the uncertainty to exist." So interpreted, this contract required the plaintiff to make the

payments upon the shipments of the balance of the six thousand gallons of wine at a bank in the city of Los Angeles, and not in Chicago, as insisted upon by it. This being so, it became the duty of the plaintiff, upon being notified that the defendant ·was prepared to make its initial shipment of one thousand barrels of said wine during the early part or middle of the month of May, to designate the bank in Los Angeles at which the latter should present its draft and shipping documents in order to receive such payment. The defendant having proceeded with its shipments of the first lot of 316 barrels of the 15,781 gallons of wine according to the initial order, prepared to begin the shipment of the one thousand barrels to be shipped in May; and on May 18th sent to B. F. Klein, in care of Joseph Schneible at Chicago, its dispatch stating ''will start shipping thousand barrels tomorrow; first car white. Balance to be shipped immediately. Wire bank instructions by return wire.'' Upon receiving no reply the defendant followed this message with another dated May 20, 1920, and sent direct to said Schneible, requesting the designation of a particular bank in Los Angeles at which the payment for said shipment of a thousand barrels of wine then ready for transmission was to be made, and asking for an answer by return wire. After waiting four days for a reply, which did not come, the respondent wired to said Joseph Schneible its cancellation of its said agreement to sell said wine, to which said Joseph Schneible sent his reply dated May 28th, informing the respondent that he proposed to hold it to the letter of its contract, but in which no intimation was given of any intention on his part to make payments for said wine at Los Angeles, or to designate any bank in that city or elsewhere in California at which such payments would be made. When the entire month of May had passed the respondent entered into the agreement with Maurice Selig for the disposal of its wines, to which reference has above· been made. On June 17, 1920, the plaintiff herein commenced an action in the United States district court for the southern district of California, against the respondent herein seeking an injunction to prevent the said defendant in that action from disposing of its said wines to or through said Selig, in which said action the agreement between the parties was fully set forth and it was affirma-

tively alleged that the same was made and was to be performed in the city of Chicago. Having failed to secure such injunction the said plaintiff commenced the present action, making similar allegations as to the place wherein said agreement was by its terms to be performed. It was upon the foregoing state of facts that the trial court reached the conclusion embodied in its findings, that the contract between these parties required the plaintiff to make payments of the amounts due from time to time upon the defendant's shipments of said wine at a bank in Los Angeles to be designated by said plaintiff, and upon the presentation by the respondent of the shipping documents showing the shipment of said wine, and that having failed and refused, upon the defendant's repeated requests, to designate said place of payment at which the defendant should present said shipping documents and thereupon receive such payment, the plaintiff had violated the terms of said agreement and that such violation justified the defendant in its cancellation of said agreement. We are satisfied that the findings of the trial court in this regard find ample support in the evidence in the case. We do not deem the other alleged errors of the trial court during the trial as of sufficient importance or merit to warrant particular consideration.

The judgment is affirmed.

Wilbur, J., Shaw, C. J., Waste, J., Lennon, J., and Lawlor, J., concurred.